FILED
AUG 11 2008
8-11-08
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**JUDGE NORGLE**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) **08CR 633** |
| | ) Violation: Title 18, United States Code, |
| LAWSON PRODUCTS, INC. | ) Sections 1341 and 1346 |

The UNITED STATES ATTORNEY charges: **MAGISTRATE JUDGE SCHENKIER**

1. At times material to this count:

    a. Defendant LAWSON PRODUCTS, INC. ("LAWSON PRODUCTS") was a publicly traded company organized under the laws of the State of Delaware, with its principal offices in Des Plaines, Illinois. Defendant LAWSON PRODUCTS was a distributor and marketer of systems, services and products sold to various entities in the public and private sectors. Defendant LAWSON PRODUCTS was the parent company of several subsidiaries, including Drummond American Corporation and Cronatron Welding Systems, Inc. Defendant LAWSON PRODUCTS generated approximately $400 million in sales annually.

    b. Defendant LAWSON PRODUCTS had two divisions: maintenance and repair operation (the "MRO business") and original equipment manufacturing (the "OEM business"). Defendant LAWSON PRODUCTS sold its MRO products through sales agents. These sales agents generally were permitted by defendant LAWSON PRODUCTS to negotiate with its customers over the prices their customers would pay for defendant LAWSON PRODUCTS merchandise. As a general rule, defendant LAWSON PRODUCTS's profits and the sales agents' commissions were greater if they sold products at higher prices.

c. Defendant LAWSON PRODUCTS maintained programs for its MRO business through which sales agents could provide items of value to individuals for purchasing defendant LAWSON PRODUCTS merchandise on behalf of those individuals' employers (the "Illicit Programs"). Among the Illicit Programs were Winners Choice, Cavalcade of Awards, LPI, and Spike Special. Defendant LAWSON PRODUCTS administered these Illicit Programs through its Merchandising Department.

d. Defendant LAWSON PRODUCTS and its sales agents often provided a greater amount of rewards through these Illicit Programs if the individuals ordered a greater amount of defendant LAWSON PRODUCTS merchandise on behalf of their employers. Some defendant LAWSON PRODUCTS sales agents received training suggesting that they provide the customers' employees with rewards through the Illicit Programs totaling approximately four to five percent of the amount of the sale.

e. Defendant LAWSON PRODUCTS set up "promotional funds" for each sales agent that allowed defendant LAWSON PRODUCTS and the sales agents to split the cost of the Illicit Programs. When a sales agent's customer ordered merchandise, defendant LAWSON PRODUCTS placed a percentage of the order, based on the amount of commission earned by the sales agent, into the promotional fund, up to a certain maximum dollar amount. A sales agent could then use the promotional fund to pay for at least a portion of the costs of items from the Illicit Programs. The sales agent would pay the remainder of the costs of items from the Illicit Programs out of the commissions the sales agents earned.

2

### *Winners Choice*

f.      Winners Choice was a program in which defendant LAWSON PRODUCTS directed a third-party named Keogh, Inc. ("Keogh") to issue checks payable to employees of defendant LAWSON PRODUCTS's customers and to retail stores selected by the recipients of the checks. Keogh would mail these checks to the employees of defendant LAWSON PRODUCTS's customers, who could then use these checks to purchase items in the designated retail stores. There were several steps that occurred before Keogh would issue these checks:

   i.   <u>Cold Certificates</u>. The first step was for sales agents to place orders for "cold certificates" with defendant LAWSON PRODUCTS, which would then inform Keogh of the orders. The sales agents would designate the recipient, the mailing address, the number of cold certificates, and the denomination of the cold certificates. Although the cold certificates were limited to $10 or $25 increments, sales agents could order multiple cold certificates totaling far in excess of $25 to be sent to a recipient.

   ii.  <u>Redemption of Cold Certificates</u>. Next, Keogh would ship, via mail or courier, the cold certificates to the recipient at the designated address. Along with the cold certificates, Keogh sent a list of retail stores participating in the Winners Choice program. To redeem the cold certificates, the recipient would fill out an order form by selecting a retail store and the address where Keogh should send the check. The recipient then sent the order form back to Keogh through the mail.

   iii. <u>Checks</u>. Once the recipient had redeemed the cold certificates, Keogh mailed one or more checks, also known as "hot certificates," to the recipient. While each check was written for $50 or less, Keogh could mail multiple checks totaling far in excess of $50 to a recipient. The checks issued by Keogh would list two payees: (1) the individual recipient and (2) the retail store designated by the individual recipient. The individual recipient could then use the checks at the designated retail store.

### *Cavalcade of Awards and LPI*

g.  Cavalcade of Awards and LPI were programs in which defendant LAWSON PRODUCTS and its sales agents allowed employees of their customers to select items for themselves from catalogs that were produced by defendant LAWSON PRODUCTS. While the Cavalcade of Awards and LPI programs included items, such as tools, that could be used by customers, the catalogs also contained personal items, such as golf equipment, electronics, and toys. Employees of defendant LAWSON PRODUCTS's customers could select items based upon the amount of "points" or "banque notes" they earned through the amount of purchases the employees caused their employers to make.

### *Spike Special*

h.  Spike Special was a program offered at certain times of the year in which Drummond American and its sales agents provided items of value to employees of Drummond American's customers if the employees purchased a certain amount of a specific item on behalf of their employers during the time period that the Spike Special was offered. As with the Cavalcade of Awards and LPI programs, the Spike Special program allowed employees to select items that could be used for their employers, such as tools, or personal items, such as golf equipment, electronics, and toys.

### *Policies*

i.  Defendant LAWSON PRODUCTS had a policy that purported to bar sales agents from providing items of value to employees of federal, state, and local government. While this policy existed, defendant LAWSON PRODUCTS did not have any meaningful safeguards in place to detect whether its sales agents were providing items of value to employees of federal, state,

4

and local government. Additionally, prior to December 15, 2005, defendant LAWSON PRODUCTS generally took no disciplinary action against sales agents it discovered were providing items of value to employees of federal, state, and local government.

j.　　The employees of defendant LAWSON PRODUCTS customers owed a duty of honest services to the their employers, which included the duty to provide their employers with undivided loyalty that was free from conflict of interest between their personal interests and the interests of their employers. Further, many laws and policies existed that prohibited defendant LAWSON PRODUCTS customers from accepting anything of value from vendors in exchange for the customers' business.

2.　　Beginning no later than 1992 and continuing until approximately December 15, 2005, at Des Plaines and Vernon Hills, in the Northern District of Illinois, and elsewhere,

LAWSON PRODUCTS, INC.,

defendant herein, along with others known and unknown, devised and intended to devise, and participated in, a scheme and artifice to defraud defendant LAWSON PRODUCTS's customers of money, property, and the intangible right to the honest services of their employees, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, as further alleged herein.

3.　　It was part of the scheme to defraud that from on or about March 11, 1992 through on or about December 15, 2005, defendant LAWSON PRODUCTS provided substantial rewards, including approximately $9.7 million in Winners Choice checks, to employees of its customers in order to induce them to purchase, and to reward the employees for purchasing, merchandise from LAWSON PRODUCTS on behalf of their employers.

4. It was further part of the scheme to defraud that defendant LAWSON PRODUCTS trained its sales agents how to discuss its Illicit Programs with its customers' employees in order to induce and increase sales.

5. It was further part of the scheme to defraud that defendant LAWSON PRODUCTS taught its sales agents to use the Illicit Programs to minimize customer complaints about pricing and price increases.

6. It was further part of the scheme to defraud that defendant LAWSON PRODUCTS's sales agents occasionally told customers' employees that the Winners Choice certificates were "cash," "non-traceable," "non-taxable," and could not be linked to LAWSON PRODUCTS.

7. It was further part of the scheme to defraud that defendant LAWSON PRODUCTS directed its sales agents and Keogh to send Winners Choice cold certificates and checks to the home addresses of the employees of the customers, rather than the customers' business addresses, to conceal the fact that defendant LAWSON PRODUCTS and its sales agents were providing items of value to its customers' employees.

8. It was further part of the scheme to defraud that defendant LAWSON PRODUCTS sales agents occasionally ordered Winners Choice cold certificates and checks in the names of the spouses of the employees of the customers to conceal the fact that defendant LAWSON PRODUCTS and its sales agents were providing items of value to its customers' employees.

9. It was further part of the scheme to defraud that on occasion employees of defendant LAWSON PRODUCTS's customers misrepresented to their employers that they had not received anything of value from LAWSON PRODUCTS.

10. It was further part of the scheme to defraud that after its sales agents placed an order for Winners Choice cold certificates, defendant LAWSON PRODUCTS redacted the name of the customer from the Winners Choice order forms defendant LAWSON PRODUCTS submitted to Keogh in order to conceal the fact that defendant LAWSON PRODUCTS and its sales agents were providing items of value to the customers' employees.

11. It was further part of the scheme to defraud that defendant LAWSON PRODUCTS, in order to conceal the fact that employees of defendant LAWSON PRODUCTS's customers were receiving benefits through the Illicit Programs, intentionally did not place defendant LAWSON PRODUCTS's name or logo on the Cavalcade of Awards and LPI catalogs.

12. It was further part of the scheme to defraud that defendant LAWSON PRODUCTS knowingly did not issue or file Internal Revenue Form 1099s, as it was required to do, for employees of its customers receiving in excess of $600 a year from the Illicit Programs.

13. It was further part of the scheme to defraud that defendant LAWSON PRODUCTS improperly deducted the cost of the Illicit Programs as business expenses on its federal tax returns.

14. It was further part of the scheme to defraud that defendant LAWSON PRODUCTS misrepresented, concealed and hid, and caused to be misrepresented, concealed and hidden, the purposes of and acts done in furtherance of the aforementioned scheme.

15. As a result of the scheme, defendant LAWSON PRODUCTS obtained in excess of $30,000,000 to which it was not entitled.

16. On or about March 2, 2004, at Woodstock, in the Northern District of Illinois,

LAWSON PRODUCTS,

defendant herein, for the purpose of executing the above-described scheme and attempting to do so, knowingly caused to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, according to the directions thereon, an envelope from Keogh in Woodstock, Illinois, containing approximately $1,200 worth of Winners Choice cold certificates, addressed to the spouse of Ronald Gholdson, an employee for defendant LAWSON PRODUCTS's customer Reilly Industries, Inc., at the Gholdsons' home address in Indianapolis, Indiana.

In violation of Title 18, United States Code, Sections 1341 and 1346.

Patrick J. Fitzgerald, by DKS
UNITED STATES ATTORNEY

8